**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TAPJETS INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| UNITED PAYMENT SERVICES, INC. | § | |
| SCOTT ROSEN AND GREG ROSEN | § | |
| | § | |
| | § | |
| Defendant. | § | |

---

## INDEX TO DEFENDANTS' NOTICE OF REMOVAL

EXHIBIT 1    List of Parties, Attorneys and Status of Case

EXHIBIT 2    State Court file and docket sheet

EXHIBIT 3    Certificates of Service for Defendants United Payment Services Inc. and Scott Rosen

EXHIBIT 4    Certificate of Dissolution

EXHIBIT 5    Notice to State Court of Filing Notice of Removal

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TAPJETS INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| UNITED PAYMENT SERVICES, INC. | § | |
| SCOTT ROSEN AND GREG ROSEN | § | |
| | § | |
| | § | |
| Defendant. | § | |

## LIST OF PARTIES, ATTORNEYS AND STATUS OF CASE

**Plaintiff**

Tapjets Inc.

**Attorney for Plaintiff Tapjets Inc.**

Andrew K Weatherby
Texas State Bar No. 24098583
Weatherby Echols Law Group, PLLC
4606 FM 1960 West, Suite 400
Houston, Texas 77069
aweatherby@we-legal.com
P: (281) 315-8849
F: (832) 213-1477

**Defendants**

United Payment Services, Inc.
Scott Rosen
Craig Rosen

**Attorney for Defendants United Payment Services, Inc. Scott Rosen and Craig Rosen**

Jason Augustine
Texas State Bar No. 24001672
REEVE | AUGUSTINE | ALARAKHIA, PLLC
870 S. Denton Tap Road, Ste. 290
Coppell, Texas 75019
jason@reeveaugustine.com
P: (972) 393-4110
F: (972) 346-6898

**Status of Case**

The above referenced matter is currently pending in the 165th Judicial District Court of Harris County, Texas, styled *Tapjets Inc. v. United Payment Services, Inc., Scott Rosen and Greg Rosen,* Cause No. 2018-85721.

**EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TAPJETS INC. | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| UNITED PAYMENT SERVICES, INC. | § | |
| SCOTT ROSEN AND GREG ROSEN | § | |
| | § | |
| | § | |
|     Defendant. | § | |

---

## <u>INDEX TO STATE COURT PLEADINGS</u>

Exhibit 2(A)   State court docket sheet and list of pleadings

Exhibit 2(B)   Plaintiff's Original Petition and Request for Disclosure

Exhibit 2(C)   Attorney letter filing additional exhibits to Plaintiff's Original Petition

Exhibit 2(D)   Civil Process Request Form

Exhibit 2(E)   Citations on Defendants with certified mail tracking numbers

Exhibit 2(F)   Certified Mail Receipts for service on Defendants

Exhibit 2(G)   Domestic Return Receipts for service on Defendants

# EXHIBIT 2(A)

# 2018-85721

**COURT:**   165th
**FILED DATE:**  11/30/2018
**CASE TYPE:**  Debt/Contract - Consumer/DTPA



### TAPJETS INC

**Attorney: WEATHERBY, ANDREW KRISTOFER**

### vs.

### UNITED PAYMENT SERVICES INC

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|--------|----------|-----------|------|-----|
| 83495517 | Secretary of State | | 01/18/2019 | 1 |
| 83149731 | Domestic return receipt | | 12/14/2018 | 2 |
| 83149732 | Domestic return receipt | | 12/14/2018 | 2 |
| 83149733 | Domestic return receipt | | 12/14/2018 | 2 |
| 83053968 | Certified Mail Receipt | | 12/07/2018 | 1 |
| 83053969 | Certified Mail Receipt | | 12/07/2018 | 1 |
| 83053973 | Certified Mail Receipt | | 12/07/2018 | 1 |
| 82885726 | Certified Mail Tracking # 7017 1450 0001 3705 7400 | | 12/06/2018 | 2 |
| 82885727 | Certified Mail Tracking # 7017 1450 0001 3705 7394 | | 12/06/2018 | 2 |
| 82885728 | Certified Mail Tracking # 7017 1450 0001 3705 7387 | | 12/06/2018 | 2 |
| 82842953 | Attorney Letter (Exhibits 9-30) | | 12/04/2018 | 1 |
| 82842954 | Exh. 9 - Feb. 2016 UPS Statement Redacted | | 12/04/2018 | 8 |
| 82842955 | Exh. 10 - 2016.03.24 - re Request summary of our rates and rate plans | | 12/04/2018 | 4 |
| 82842956 | Exh. 11 - March 2016 UPS Statement Redacted | | 12/04/2018 | 7 |
| 82842957 | Exh. 12 - April 2016 UPS Statement Redacted | | 12/04/2018 | 6 |
| 82842958 | Exh. 13 - May 2016 | | 12/04/2018 | 7 |
| 82842959 | Exh. 14 - August 2016 Statement Redacted | | 12/04/2018 | 8 |
| 82842960 | Exh. 15 - September 2016 Statement Redacted | | 12/04/2018 | 7 |

| | | | |
|---|---|---|---|
| 82842961 | Exh. 16 - October 2016 Statement Redacted | 12/04/2018 | 7 |
| 82842962 | Exh. 17 - November 2016 Statement Redacted | 12/04/2018 | 9 |
| 82842963 | Exh. 18 - December 2016 Statement Redacted | 12/04/2018 | 8 |
| 82842964 | Exh. 19 - Credit Authorization Redacted | 12/04/2018 | 6 |
| 82842965 | Exh. 20 - 2016.10.21 - UPS Requested Documents, Acct. Under Review | 12/04/2018 | 3 |
| 82842966 | Exh. 21 - 2016.10.24 - Account investigation has being completed and transaction approved | 12/04/2018 | 3 |
| 82842967 | Exh. 22 - 2016.12.01 - First Data Ltr. re Funds Suspended by Security Depart | 12/04/2018 | 1 |
| 82842968 | Exh. 23 - 2016.11.30 - All Funds On Hold & Acct. being closed Redacted | 12/04/2018 | 5 |
| 82842969 | Exh. 24- 2016.12.01 - First DataTermination Letter | 12/04/2018 | 1 |
| 82842970 | Exh. 25 - 2016.12.01 - TapJets Never had an Agreement with First Data | 12/04/2018 | 1 |
| 82842971 | Exh. 26 - 2016.12.01 - Request Copy of UPS Merchant Application and Agreement | 12/04/2018 | 2 |
| 82842972 | Exh. 27 - 2016.12.01 - Notice of Intent To File a Lawsuit to Rosen | 12/04/2018 | 5 |
| 82842973 | Exh. 28 - United Payment Systems Contract Redacted | 12/04/2018 | 56 |
| 82842974 | Exh. 29 - 2016.11.14 - Merchant Services $74,500 Dispute Summary | 12/04/2018 | 3 |
| 82842975 | Exh. 30 - 2016.11.16 - Merchant Services Dispute Summary | 12/04/2018 | 3 |
| 82842976 | Civil Process Request Form | 12/04/2018 | 3 |
| 82810173 | Plaintiffs Original Petition and Request for Disclosure | 11/30/2018 | 34 |
| ·> 82810182 | Civil Case Information Sheet | 11/30/2018 | 2 |
| ·> 82810174 | Exhibit 01 | 11/30/2018 | 1 |

| ·><br>82810175 | Exhibit 02 | 11/30/2018 2 |
|---|---|---|
| ·><br>82810176 | Exhibit 03 | 11/30/2018 1 |
| ·><br>82810177 | Exhibit 04 | 11/30/2018 1 |
| ·><br>82810178 | Exhibit 05 | 11/30/2018 1 |
| ·><br>82810179 | Exhibit 06 | 11/30/2018 4 |
| ·><br>82810180 | Exhibit 07 | 11/30/2018 1 |
| ·><br>82810181 | Exhibit 08 | 11/30/2018 1 |

# EXHIBIT 2(B)

11/30/2018 9:56 PM
Chris Daniel - District Clerk Harris County
Envelope No. 29414965
By: Walter Eldridge
Filed: 11/30/2018 9:56 PM

CAUSE NO. _____

| | | |
|---|---|---|
| TAPJETS INC. | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| vs. | § | |
| | § | HARRIS COUNTY,  TEXAS |
| UNITED PAYMENT SERVICES, INC., | § | |
| SCOTT ROSEN and GREG ROSEN | § | |
|     Defendants. | § | _____JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, TAPJETS INC., and files this Original Petition and Request for Disclosure complaining of and against Defendants, UNITED PAYMENT SERVICES, INC., SCOTT ROSEN and GREG ROSEN, and in support hereof would respectfully show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Lever 2, TRCP 190.3. Plaintiff affirmatively pleads that this suit is not governed by the expedited-action process.

### II.    PARTIES AND SERVICE

2. TAPJETS INC. ("TapJets") is a corporation organized and existing under the laws of the State of Texas, doing business in Texas, and having its principal office at 3707 Cypress Creek Parkway, Suite 103, Houston, Texas 77068.

3. UNITED PAYMENT SERVICES, INC. ("UPS") is a corporation organized and existing under the laws of the State of California. UPS does not maintain a place of regular business in Texas. UPS can be served by the Texas Secretary of State through its registered agent for service of process, Scott Rosen, at <u>5080 Wagner Way, Oak Park, California 91377</u>, in accordance with Tex. Civ. Prac. & Rem. Code §17.041-045.

4.    SCOTT ROSEN is an individual residing in the State of California. He can be served by the Texas Secretary of State at his residence, located at <u>5080 Wagner Way, Oak Park, California 91377</u>, in accordance with Tex. Civ. Prac. & Rem. Code §17.041-045. Scott Rosen is an officer and registered agent of UPS.

5.    GREG ROSEN is an individual residing in the State of California. He can be served by the Texas Secretary of State at his residence, located at <u>1033 Via Anita, Newbury Park, California 91320</u>, in accordance with Tex. Civ. Prac. & Rem. Code §17.041-045. Greg Rosen is an officer of UPS.

### III.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over the controversies and parties involved in this case. Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000. The amount in controversy exceeds the minimal jurisdictional limits of this Court.

7.    Defendants are nonresidents of Texas. The Texas long-arm statute empowers the Court to exercise jurisdiction over Defendants because each has conducted business in Texas and committed the tort of fraud, in whole or in part, in the State of Texas. Additionally, Defendants solicited TapJets by telephone or mail in Texas and entered into an agreement with TapJets that was to be performed in Texas.

8.    Exercising jurisdiction over Defendants' in this case comports with federal due process limitations and traditional notions of fair play and substantial justice because Defendants have established minimum contacts in Texas as detailed herein.

9.    Venue is proper under Tex. Civ. Prac. & Rem Code §15.002 because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas.

### IV.    FACTUAL BACKGROUND

Certified Document Number: 82810173 - Page 2 of 34

10.   TapJets is a technology company offering private jet charter services to its clients through mobile and internet platforms. TapJets' technology enables users to book private jet transportation services based on arrival date, passengers and destination.

11.   In and around February of 2016, TapJets was a newly formed corporation seeking to accept credit card and debit card payments from its clients. Given the nature of TapJets' business and the air travel industry as a whole, it was imperative that TapJets be able to accept card payments both in-store and online.

12.   Credit card payment processing services allow a business (the "Merchant") to accept card payments from its customers. Before a Merchant can accept card payments it must first secure a bank account which allows the Merchant to accept credit and debit cards as payment (the "Merchant Account"). In order to open a Merchant Account, a contractual agreement is made by and between the Merchant and the Merchant's bank (the "Acquiring Bank"), as well as any payment processor to be involved in the Merchant's transactions, such as an independent sales organization ("ISO") or member service provider ("MSP") (collectively referred to herein as "Payment Processor").

13.   Payment Processors are not banks, rather they are financial institutions appointed by a Merchant whose function is to supply authorization and settlement services to the Merchant and the Acquiring Bank. Payment Processors such as ISO's or MSP's are registered with Visa, MasterCard and a sponsoring member bank, and are tasked with acquiring and supporting Merchants on behalf of their sponsoring bank.

14.   When a customer makes a card payment to a Merchant, the transaction undergoes a chain of approval before the payment can be accepted. First, the cardholder begins a credit card transaction by presenting his or her card to the Merchant as payment for goods or services.

Certified Document Number: 82810173 - Page 3 of 34

The Merchant uses their credit card machine, software or gateway to transmit the cardholder's information and the details of the transaction to Merchant's Acquiring Bank and/or Payment Processor. The Payment Processor then carries out a series of anti-fraud measures and determines whether the customer has the means to complete the transaction. Payment Processor then routes the transaction information through the appropriate card network to the bank where the credit card was originally issued for approved or authorization. If approved, the card issuer sends a response code back through the appropriate network to the Acquiring Bank and/or Payment Processor which is then sent to Merchant's payment terminal and stored in a batch file awaiting settlement.

15. Interchange is a complex process created by Visa and Mastercard to assist banks in maintaining their credit card programs. Merchants pay a fee on every credit card sale they make; a portion of that fee is paid to the bank that issued the credit card (the "Interchange Fee"), calculated as the total dollar value of the Merchant's sale multiplied by the percentage set by Visa or MasterCard (the "Interchange Rate"). The total fee that merchants pay is known as the "Discount Fee" and is determined by applying a "Discount Rate" to the total sale amount. In short, the Discount Fee is the sum of the Interchange Fee plus any other fees charged to Merchant in order to process the transaction. Payment Processors generally charge the Merchant a Discount Fee, rental fees for credit card terminals and various other fees agreed upon with the Merchant in writing.

16. This case arises from a deceptive and fraudulent scheme engineered by UPS, a Payment Processor, and its officers, Scott Rosen and Craig Rosen, to solicit TapJets into using UPS' credit card processing services based on false promises and representations.

17. UPS' fraudulent and deceptive practices while dealing with TapJets included the following,

amongst others:

    a.  UPS assessed and collected erroneous and undisclosed fees from TapJets.

    b.  UPS increased TapJets' fees on a monthly basis through invoices without explanation or recourse.

    c.  UPS represented to TapJets that its Merchant Application was just that—an application—when in fact, once submitted, UPS intended to enforce the Merchant Application as a binding contract against TapJets.

    d.  UPS established a Merchant Account on TapJets' behalf without consent.

    e.  UPS misrepresented its affiliation with member banks and its role in processing TapJets' card payments.

    f.  UPS inserted themselves into all business communications between TapJets and the bank in order to mask UPS' deceptive practices.

    g.  To cover-up its fraud, UPS' officers self-developed a Merchant Account Application System ("MAAS System") designed to prevent TapJets' access to critical documents that defined the relationship between TapJets and UPS.

    h.  UPS refused to provide TapJets a copy of the Merchant Application so that TapJets could not compare the fees charged on UPS' invoices with the fees stated on UPS' Merchant Application.

    i.  Upon receiving TapJets' demand letter, UPS suspended TapJets' Merchant Account, withdrew funds from same, reversed previously approved transactions, and ultimately terminated TapJets' account without just cause.

    j.  UPS intentionally disrupted TapJets' business by making false accusations that TapJets' actively participated in fraudulent transactions.

18.     TapJets' initial search for a Payment Processor was made difficult due to the fact that TapJets is in the travel and booking industry. Many Payment Processors are unable to provide support to companies such as TapJets because of the underwriting requirements involved.

19.     On or about February 2016, TapJets' CEO Eugene Kesselman ("Kesselman") discovered UPS by way of internet search. Kesselman reviewed the information contained on UPS' website at www.unitedpaymentservices.com (the "UPS Website") and subsequently left a voicemail with UPS inquiring of its services.

20.     The UPS Website stated that UPS was in the business of "credit and ATM/debit card processing,"[1] that UPS had "years of experience in the payment processing"[2], and that "[UPS] is a registered ISO of Wells Fargo Bank, N.A., Walnut Creek, California"[3]. UPS' Website also prominently featured a logo from www.topcreditcardprocessors.com indicating that UPS had been awarded "Best Processor Winner"[4]. (See Exhibit "1"). UPS' Website claimed to provide "Wholesale Pricing," "Lowest Overall Cost, Guaranteed," "Free Equipment," and "24-7 Professional Support!". (See Exhibit "2").

21.     On February 11th, 2016, Kesselman received a call from UPS' Director of Sales and Services, Kari Gibson ("Gibson"). He provided Gibson with information as to TapJets' business and mentioned that other Payment Processors had been unable to serve as TapJets' Payment Processor due to the underwriting requirements involved. Gibson then assured Kesselman that TapJets industry would not be an issue because UPS approves their own accounts, in most cases on the same day.

[1] See Exhibit "1" - UPS About-Us webpage first sentence - highlighted.
[2] See Exhibit "1" - UPS About-Us webpage third sentence - highlighted.
[3] See Exhibit "1" - UPS About-Us webpage bottom footer / bottom portion of the page - highlighted.
[4] See Exhibit "1" - Yellow and Red logo on the right side with depiction of credit card, 5 stars.

22.   Gibson's representation to Kesselman seemed to align with the information prominently displayed on UPS' Website, namely that UPS offers customers the ability to "Begin Processing Credit Cards Today" and that UPS "Can approve your business for a merchant account".5 (See Exhibit "1")

23.   Gibson further represented to Kesselman that, because UPS' had a goal to sign up as many customers as possible during the month of February, she was offering TapJets a "cost plus" arrangement that would only result in TapJets paying the Interchange Fee and a small Discount Fee for UPS to serve as Payment Processor. Gibson offered TapJets a 0.3% Discount Fee for Visa and Mastercard, and 0.5% Discount Fee for American Express.  In addition, Gibson informed TapJets that Interchange Fee would range between 0.5% to 2.9% depending on the card. Kesselman confirmed several times during the conversation with Gibson that UPS would not charge TapJets any hidden fees and was repeatedly assured that, aside from a  $29.99 monthly account fee and 0.10 cent fee per transaction, UPS' charged absolutely no other fees.

24.   Kesselman expressed to Gibson that TapJets also needed the ability to accept card payments online. Gibson offered an Authorize.Net gateway account for an additional fee of $15.00 per month, along with a PCI compliance fee of $7.00 per month.  Gibson assured Kesselman that these fees were from Authorize.Net and not from UPS.

25.   Kesselman and Gibson continued to discuss TapJets' business information such as projected sales volumes and average transaction size. Kesselman shared with Gibson his negative experiences with previous Payment Processors and dissatisfaction with the hidden fee approach sometimes associated with such services. Gibson reassured Kesselman that UPS'

_____

5 See Exhibit "1" – Orange "Signup Today" form.

fees and rates were all inclusive. To further ease Kesselman's concerns, Gibson referred him to the testimonials and references on UPS' Website, which Kesselman then reviewed and relied upon. One such testimonial suggested that a UPS client had saved significant sums on processing fees by switching to UPS. (See Exhibit "3").

26. Once Kesselman and Gibson reached an initial understanding as to the basic terms for a future agreement between UPS and TapJets, Gibson offered to send Kesselman an online Merchant Application which UPS required in order to open TapJets' Merchant Account. Gibson stated that the Merchant Application would allow Kesselman to review the fees they had discussed and verify some of the relevant TapJets' sales data.

27. Shortly after ending the February 11th phone call with Gibson, Kesselman received an email from UPS stating in part: (See Exhibit "4")

"This e-mail has been generated because an electronic application for a merchant account has been initiated by Kari Gibson of United Payment Services pursuant to your request."

"Click on the link below to go to your secure online application and complete the application process.  The password your sales representative provided will be required."

28. Kesselman called Gibson to get a password and expressed his concern about having to call her rather than being able to create his own. Gibson assured Kesselman that this procedure was common and that Gibson had the password to complete UPS' portion of the process. Kesselman informed Gibson that he would not be able to complete the Merchant Application on November 11, 2018, because it required TapJets' tax identification number which Kesselman did not have readily available. In response, Gibson stated that Kesselman only needed to review the portions of the Merchant Application they had discussed and that she would get all other pertinent information (bank account information, website data, tax identification number, etc.) once TapJets was ready to sign a formal written agreement with

Certified Document Number: 82810173 - Page 8 of 34

UPS. By doing this, Gibson stated, TapJets would be able to lock in the low rates despite the fact that UPS and TapJets may not actually execute a formal contract until a later date. Kesselman confirmed with Gibson over the phone that the Merchant Application rates aligned with those discussed. Aside from the information, however, the Merchant Application was blank and incomplete. Kesselman ended the conversation with Gibson without submitting the Merchant Application.

29.   On February 11th, 2016 at 2:10 p.m., within minutes of ending his correspondence with Gibson, Kesselman received an email from Gibson stating: (See Exhibit "5")

> This e-mail has been generated because an <u>electronic application</u> for a <u>United Payment Services merchant account</u> has been electronically signed by Eugene Kesselman.

> The application is currently being processed and your account executive will be in contact with you shortly.

30.   In reviewing the Merchant Application, at no point did Kesselman select the button reading "Click Here to Submit Signed Application" nor the "I Agree" button because the application was missing information and incomplete. Kesselman also noticed several discrepancies on the application which had not been discussed, such as the number of TapJets employees and information about TapJets office location.

31.   As a follow-up to the above-stated email, Kesselman called Gibson once again and requested clarification regarding several issues and concerns with UPS' Merchant Application and the UPS' application process. Kesselman's concerns were largely ignored by Gibson, who simply stated that TapJets will receive a full copy of the final document for its signature once TapJets has been approved.

32.   From February 12-15, 2016, Gibson continued to request documents and information from TapJets which *her underwriter* needed in order to approve the application and TapJets'

Certified Document Number: 82810173 - Page 9 of 34

Merchant Account. Gibson's correspondence reads in part :

> You noted in the list of items that you attached the Articles of Incorporation, but it doesn't appear that you included it. Please forward so <u>that I can get your account approved</u>. (emphasis added).

Gibson further emailed Kesselman regarding the need to have a teleconference with *her underwriter*, which reads in part as follows: (See Exhibit "6")

> Yes - got it and have forwarded to <u>my underwriters for approval</u>. <u>My underwriter has also noted your file to expect a call</u> as they have a couple of questions. I am not sure if they will reach you today being a holiday or may not be until tomorrow. (emphasis added)

Kesselman never received a call from the UPS underwriter.

33.  On February 17, 2016, Kesselman requested an update as to approval or denial of the application. Gibson replied that same day and stated in part: (See Exhibit "6")

> We are just waiting on the underwriter to sign off on your account. This should be done by early tomorrow morning at latest.

34.  On February 18, 2016, TapJets received an email from UPS which reads as follows: (See Exhibit "7")

    i.  <u>We have approved your merchant account</u> with the following parameters (omitted).

    ii.  The business banking account that <u>we will be depositing</u> your credit card funds is (omitted).

    iii.  Our customer service and technical staff are standing by 24/7 to keep your processing on track.  Should you need assistance, please call 1-888-464-0113 and select the appropriate option.

35.  On February 22, 2016, TapJets requested a credit card terminal from UPS. In response, Kesselman received an email from UPS' representative, Chad Parziek, which contained (1) UPS' Credit Card Payment Form (See Exhibit "8") and (2) UPS' Terminal Addendum Agreement (See Exhibits "9"). Exhibit 9 reads in part: (emphasis added)

    i.  This Agreement is a contract between the <u>Merchant named below and United Payment</u>

Services, Inc. (UPS).

ii. NOW THEREFORE, United Payment Services (UPS) and the Party (Merchant) agree as follows:

iii. I. Merchant agrees that all equipment supplied by UPS is the property of UPS, is being licensed to Merchant, and must be returned in good and working condition within ten (10) days of the termination or expiration of the Merchant Account with UPS.

36. On or about March 2016, TapJets received UPS' first billing statement for February 2016. TapJets' reviewed the statement on March 24, 2018 (See Exhibit "10"), and noticed a section labeled "Important Information About Your Account" which had been highlighted in red. Upon further review, this section purported to increase the agreed-upon which UPS had offered to TapJets and imposed a barrage of previously undisclosed charges. The "Important Information About Your Account" portion of UPS' February billing statement reads as follows:

"EFFECTIVE WITH YOUR APRIL 2016 STATEMENT, IF YOUR ACCOUNT IS SET WITH ERR PRICING, YOUR NON-QUALIFIED DISCOUNT RATES FOR VISA, MASTERCARD, DISCOVER FULL ACQUIRING AND/OR AMERICAN EXPRESS, AS APPLICABLE, FOR CREDIT AND NON-PIN (SIGNATURE) DEBIT CARD TRANSACTIONS, WILL BE INCREASED BY 0.10%. EFFECTIVE WITH YOUR APRIL 2016 STATEMENT, WE WILL BE INCREASING THE PER SALES ITEM FEE BY $0.03 FOR VISA, MASTERCARD, DISCOVER FULL ACQUIRING AND/OR AMERICAN EXPRESS, AS APPLICABLE, FOR CREDIT AND NON-PIN(SIGNATURE) DEBIT CARD TRANSACTIONS. THIS WILL APPEAR ON YOUR STATEMENT AS A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED AS ANOTHER ITEM FEE. EFFECTIVE WITH YOUR APRIL 2016 STATEMENT, WE WILL BE INCREASING THE OTHER VOLUME FEE BY 0.04% WHICH SHALL BE CALCULATED BY MULTIPLYING THE OTHER VOLUME FEE BY YOUR NET SALES VOLUME FOR VISA, MASTERCARD, DISCOVER FULL ACQUIRING AND/OR AMERICAN EXPRESS, AS APPLICABLE, FOR CREDIT AND NON-PIN(SIGNATURE) DEBIT CARD TRANSACTIONS. THIS FEE WILL APPEAR ON YOUR STATEMENT AS A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED AS ANOTHER VOLUME FEE. CONTINUING YOUR MERCHANT ACCOUNT WITH US OR USE OF YOUR MERCHANT ACCOUNT AFTER 30 DAYS WILL REPRESENT YOUR ACCEPTANCE TO THESE TERMS. EFFECTIVE WITH YOUR APRIL 2016 STATEMENT, A DATA USAGE CHARGE OF $0.0195 PER DISCOVER FULL ACQUIRING SALE, CREDIT AND NON-

Certified Document Number: 82810173 - Page 11 of 34

PIN(SIGNATURE) DEBIT CARD TRANSACTIONS, WILL BE PASSED THROUGH TO YOU. THIS WILL APPEAR ON YOUR STATEMENT AS A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED AS DISCOVER DATA USAGE. EFFECTIVE WITH YOUR APRIL 2016 STATEMENT, A <u>DISCOVER INTERNATIONAL SERVICE FEE OF 0.80%</u> WILL BE PASSED THROUGH TO YOU. THIS FEE IS CHARGED FOR ALL DISCOVER FULL ACQUIRING SALES (EXCLUDING CASH OVER), CREDIT AND NON-PIN(SIGNATURE) DEBIT CARD, CONDUCTED AT A MERCHANT LOCATION IN THE US WHERE THE ISSUER IS NOT LOCATED IN THE US. THIS FEE WILL APPEAR ON YOUR STATEMENT AS A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED AS DSCV INTL SRVC FEE. EFFECTIVE WITH YOUR APRIL 2016 STATEMENT, A <u>DISCOVER INTERNATIONAL ACQUIRER PROCESSING FEE OF 0.50%</u> WILL BE PASSED THROUGH TO YOU. THIS FEE IS CHARGED FOR ALL DISCOVER FULL ACQUIRING SALES (INCLUDING CASH ADVANCE AND CASH OVER), CREDIT AND NON-PIN(SIGNATURE) DEBIT CARD, WHEN THE COUNTRY WHERE THE MERCHANT IS LOCATED IS DIFFERENT THAN THE COUNTRY OF THE ISSUER. THIS WILL APPEAR ON YOUR STATEMENT AS A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED AS DSCV INTL ACQR FEE. EFFECTIVE APRIL 2016, DISCOVER IS <u>INCREASING THE DUES AND ASSESSMENTS FEE TO 0.13%</u> WHICH IS <u>MULTIPLIED BY YOUR GROSS SALES VOLUME</u> FOR DISCOVER FULL ACQUIRING CREDIT AND NON-PIN (SIGNATURE) DEBIT CARD TRANSACTIONS. THIS RATE INCREASE WILL APPEAR BEGINNING WITH YOUR APRIL MONTH-END STATEMENT RECEIVED IN MAY, APPEARING AS A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED DISCOVER DUES AND ASSESSMENTS.

37. UPS' billing statement—prepared less than two weeks after UPS' representative submitted TapJets' Merchant Application without consent—added and/or modified at least seven different fees and charges to TapJets.

38. On March 24th, 2016, Kesselman emailed Gibson and requested a copy of the Merchant Application so that TapJets could compare the charges on UPS' billing statement with those stated on the application. In response, Gibson stated that unless Kesselman had downloaded and saved a copy on some previous occasion, it would have to be mailed to TapJets' office. Important to note here is that UPS never provided TapJets with any opportunity whatsoever to download a copy of the application. Kesselman then requested that Gibson provide him a

summary of the rates UPS and TapJets had agreed to. (See Exhibit "11")

39.  Shortly thereafter, Gibson provided TapJets with the following information via email:

> Your merchant account is set up with the following pricing:
> Interchange (cost) plus .30% and .10 cents per transaction Interchange fees range
> between .05% for debit cards and 2.95% for corporate cards.

40.  On or about the first week of April 2016, TapJets received UPS' March billing statement.

The statement yet again contained a section labeled "Important Information About Your

Account," reading as follows: (See Exhibit "12")

> EFFECTIVE APRIL 2016, MASTERCARD IS <u>INCREASING THE DUES AND
> ASSESSMENTS</u> GREATER THAN OR EQUAL TO $1000.00 FEE FROM <u>0.13%
> TO 0.14%</u> WHICH IS MULTIPLIED BY YOUR GROSS SALES VOLUME FOR
> MASTERCARD CREDIT AND NON-PIN (SIGNATURE) DEBIT CARD
> TRANSACTIONS GREATER THAN OR EQUAL TO $1,000.00. THIS RATE
> INCREASE WILL APPEAR BEGINNING WITH YOUR APRIL MONTH-END
> STATEMENT RECEIVED IN MAY, APPEARING AS A SEPARATE LINE ITEM
> IN THE SUMMARY OF CARD FEES IDENTIFIED AS MASTERCARD
> DUE/ASMT>=1000. EFFECTIVE APRIL 2016, VISA WILL REPLACE THE
> KILOBYTE FEE WITH A <u>NEW FILE TRANSMISSION FEE</u> WHICH SHALL BE
> <u>CALCULATED AT $0.0018</u> PER VISA CREDIT AND NON-PIN(SIGNATURE)
> DEBIT CARD TRANSACTIONS. <u>THIS FEE WILL BE PASSED THROUGH TO
> YOU</u> WITH YOUR APRIL STATEMENT RECEIVED IN MAY APPEARING AS
> A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED AS
> VISA FILE TRANSMISSION FEE. EFFECTIVE APRIL 2016, VISA
> IMPLEMENTING <u>A NEW ACQUIRER CREDIT VOUCHER DATA PROCESSING
> FEE.</u> THIS FEE WILL BE CHARGED ON ALL VISA RETURN TRANSACTIONS
> <u>AT A RATE OF</u>$0.0195 FOR CREDIT RETURN TRANSACTIONS AND AT A
> <u>RATE OF $0.0155 FOR SI</u>GNATURE DEBIT RETURN TRANSACTIONS. THIS
> FEE WILL BE PASSED THROUGH TO YOU WITH YOUR APRIL STATEMENT
> RECEIVED IN MAY APPEARING AS A SEPARATE LINE ITEM IN THE
> SUMMARY OF CARD FEES IDENTIFIED AS ACQ DATA PROC RTN C AND/OR
> ACQ DATA PROC RTN DEFFECTIVE APRIL 1, 2016, <u>A NEW FEE
> "SECURECODE TRANSACTION FEE"</u> WILL BE INTRODUCED FOR
> VERIFICATION REQUESTS FOR MASTERCARD SECURECODE
> TRANSACTIONS <u>OF $0.03 PER TRANSACTION</u>. THIS FEE WILL BE BILLED
> ON YOUR MAY 2016 STATEMENT FOR APRIL 2016 TRANSACTIONS AND
> MONTHLY THEREAFTER. THIS FEE WILL APPEAR ON YOUR STATEMENT
> AS A SEPARATE LINE ITEM IN THE SUMMARY OF CARD FEES IDENTIFIED
> AS MC ACQ SECURECD TN FEE.

41.  The above-listed paragraph imposed three new fees on TapJets, in addition to increasing two

existing fees. Upon TapJets' reviewing this statement from UPS, it once again requested a copy of any agreement between UPS and TapJets. UPS again stated that it would be sent to TapJets by regular mail. No such agreement ever arrived. Accordingly, TapJets had no way to determine whether the fees being charged by UPS were in accordance with any written agreement between the parties.

42. On or about the first week of May 2016, Plaintiff received UPS' April billing which again contained a section labeled "Important Information About Your Account," imposing two additional fees on TapJets. (See attached Exhibit "13")

43. Kesselman again requested a copy of the Merchant Application from Gibson, who stated that she could not provide an electronic copy because the system UPS uses for Merchant Applications—designed and built by Scott Rosen—could only be accessed by Scott Rosen and Greg Rosen. Contrary to her prior representations, Gibson then informed Kesselman that once an Application has been submitted it cannot be accessed by internet link or password.

44. Gibson assured Kesselman that the fees charged to TapJets were within the range they had discussed and then stated, "if you add all the changes and fees together, it will be below 2.9%." Kesselman lacked the requisite documentation to verify Gibson's representations for himself.

45. UPS' billing statements from May – December 2016—excluding only the months of June and July—each contained fee increases and changes to UPS' calculations (See Exhibits "14-19"). TapJets' representatives called the UPS every month requesting a copy of the Merchant Application and rates to no avail.

46. UPS' August 2016 billing statement to TapJets contained a section reading as follows: (See Exhibit "15")

Certified Document Number: 82810173 - Page 14 of 34

<u>IN 2013,</u> THE JEANIE DEBIT NETWORK IMPLEMENTED A $9.00 ANNUAL MERCHANT LOCATION FEE. EFFECTIVE SEPTEMBER 2016, <u>YOUR ACCOUNT WILL BE ASSESSED A JEANIE NETWORK ANNUAL FEE IN THE AMOUNT OF $9.00.</u> THIS FEE IS APPLICABLE TO LOCATIONS SETUP TO ACCEPT TRANSACTIONS ON THE JEANIE DEBIT NETWORK. THIS FEE WILL APPEAR ON YOUR STATEMENT AS A SEPARATE LINE ITEM IDENTIFIED AS JEANIE PARTICIPATE FEE.

47.   During TapJets' and UPS' initial fee discussions in February 2016, UPS made no mention of any applicable "Jeanie" fees. UPS was most certainly aware of those fees because, as indicated above, they were implemented back in 2013. UPS intentionally concealed this information from TapJets in order to secure a business relationship based on false promises of low rates.

48.   Scott Rosen and Greg Rosen designed, commissioned, and controlled a computer system known as "Merchant Application Acceptance System" ("MAAS") in order to disguise UPS' fraudulent billing practices. MAAS was hosted on UPS' internal network but remained under the complete control of Scott Rosen and Greg Rosen. These Defendants also created a Virtual Private Network ("VPN") allowing them to access MAAS from any location in the United States. Through MAAS, UPS and its officers were able to unilaterally alter documents after they had been submitted by the Merchant.

49.   During the course of UPS' relationship with TapJets, Scott and Greg Rosen added and removed relevant documents and data collections from MAAS in order to create a paper trail that matched the narrative UPS was presenting to TapJets. Specifically, Defendants made TapJets Merchant Application by altering fields such as the electronic signature and signature time and date to suit their needs. As a result of the MAAS system, UPS, Scott Rosen and Greg Rosen received unearned and unwarranted profits from TapJets.

50.   By the end of September 2016, UPS had processed more than $316,000.00 in TapJets' Credit

Card payments. TapJets submitted hundreds of credit cards for authorization during this time in accordance with UPS' operating procedures.

51.   TapJets was sent UPS' September 2016 billing statement on or about the first week of October 2016, which read in part as follows: (See Exhibit "16")

> IN SEPTEMBER 2012, THE STAR DEBIT NETWORK IMPLEMENTED AN ANNUAL MERCHANT LOCATION FEE. AS A REMINDER, EACH OF YOUR LOCATIONS THAT ACCEPT A STAR DEBIT TRANSACTION IN JUNE 2016 WILL BE ASSESSED THE STAR DEBIT NETWORK ANNUAL MERCHANT LOCATION FEE OF $12.00 IN NOVEMBER 2016.

52.   The above statement indicates that UPS' was once again assessing a new fee to TapJets which it should have known about since 2012. UPS intentionally withheld this information from TapJets in order to secure its business.

53.   Around this time, Kesselman contacted Gibson and suggested that TapJets may discontinue use of UPS' services as a result of the hidden charges. In response, Gibson threatened Kesselman with cancelation fees and threatened to put TapJets on a "MATCH list" ("MATCH") that would prevent TapJets from securing credit card processing services elsewhere. Lacking any ability to cancel the Merchant Account, and given the necessity of credit card payment to its business, TapJets was held hostage by UPS. TapJets would later discover that UPS had in fact caused TapJets to be placed on MATCH.

54.   On October 17, 2016, TapJets was contacted by an international client requesting several trips for their executive team visiting the United States. This client paid TapJets $74,500.00 for the first of these trips. Given the amount of the transaction, TapJets obtained a copy of the client's credit card, a credit card authorization form, and a signed customer invoice. TapJets called the cardholder's issuing bank with the customer on the line to obtain authorization. Once received, TapJets followed UPS' protocols and entered the transaction

into its payment terminal. The flight was then dispatched. (See Exhibit "20")

55.   On October 21, 2016, TapJets' Controller received an email from Jennifer Leyva with UPS stating that, "[TapJets] merchant account is currently under review for high ticket sales," and requesting detailed information as to the $74,500.00 transaction on October 17, 2016. (See Exhibit "21") TapJets immediately provided the requested information to UPS and received several assurances that everything was approved with the TapJets account and no disputes had been filed. Unfortunately, TapJets' Merchant Account did not receive the $74,500.00.

56.   On October 24, 2016, UPS sent TapJets another email that stated the following; (See Exhibit "22")

> Hi Evie, I just received the update below from risk:
>
> "Thank you for the prompt response.  Account <u>investigation has being completed and transaction approved,</u> merchant will be see it reflected on their bank account within the next 48 business hours"

57.   In early November of 2016, TapJets' client purchased two additional trips in the amount of $74,230.00 and $73,750.00, for a total amount of $147,980.00. For each transaction, TapJets obtained authorization and approval from the appropriate bank and properly recorded transaction information into its terminal in the manner required. UPS verified these transactions and the funds were deposited into TapJets' Merchant Account. TapJets then provided the requested services.

58.   On November 11, 2016, TapJets customer purchased two more flights in the amounts of $76,380.00 and $74,50.00, for a total amount of $150,940.00. The transaction was again submitted from TapJets' credit card terminal to UPS in the manner required.

59.   On or about November 16, 2016, TapJets received an undated letter from First Data which read as follows:  (See Exhibit "23")

"This is to notify you that one or more batches, in the amount of $174,980, have been suspended by Security Department" (¶ 1)

"Unfortunately, we are unable to release any of these funds from suspension, until we have been able to view proper documentation that supports the transaction(s)."  (¶ 4)

"Please be aware, that any subsequent deposits made through the terminal, will automatically be suspended as well." (¶ 4)

TapJets was unclear as to why it had received the letter from First Date because (1) TapJets' dealings had only been exclusively with UPS, (2) the $174,980.00 amount referenced was not the amount Plaintiff had processed in batch (the last batch processed by TapJets amounted to $150,940.00), (3) First Data's letter omitted the transactions for which they were requesting documentation, was undated, and listed no batch number, and (4) the only information TapJets recognized was its Merchant Account number.

121.   UPS never referenced any third-party involvement during its prior dealings with TapJets. All processing emails, URL addresses, logos, and documents were handled exclusively through UPS representative Gibson. TapJets reasonably believed that UPS was a full-service processing company and that UPS was an affiliated ISO of Wells Fargo Bank. TapJets had no reason to believe otherwise until receipt of First Data's letter. TapJets sought recourse and attempted to speak with Gaby Gonzalez of First Data, but the calls were altogether ignored.

60.   Shortly after receiving the letter from First Data, TapJets discovered that UPS had overdrawn its account by performing several rapid withdrawals without TapJets' knowledge. UPS' withdrawals amounted to $154,989.55. TapJets again attempted to contact UPS to no avail.

61.   On or about November 30, 2016, TapJets noticed UPS had also failed to deposit TapJets' sales from November 11, 2016, in the amount of $150,940.00.

62.   In addition, UPS improperly withheld funds that TapJets had deposited though its terminal

in the amount of $61,453.17.

63.    In response to receiving TapJets' several concerned emails, UPS sent the following

correspondence by email dated November 30, 2016:

> All funds are on hold and the account is being closed.  Both Eugene and Maria are
> aware of this.  For further information, you will need to call Gaby at 954-845-4346.

64.    That same day, another TapJets representative received a similar email from UPS stating the

following:

> Maria, I sent a response earlier to Evie letting her know that all funds are on hold and
> the account is being closed.  For further information, you will need to call Gaby at 954-
> 845-4346

65.    Contrary to UPS' above-referenced emails, no representative of TapJets' had been previously

made aware that UPS was closing TapJets' Merchant Account.

66.    Later on November 30, 2016, UPS' representatives informed Kesselman that they had

spoken with Ms. Gaby Gonzalez in order to resolve the situation and that he should be

expecting a follow-up call. UPS requested additional information regarding certain TapJets

account drafts. Believing the withdrawals were chargebacks, TapJets complied with all of

UPS' requests for information.

67.    Gaby Gonzalez contacted Kesselman via telephone, stated she worked for UPS, and

informed Kesselman that UPS was looking into closing TapJets' Merchant Account due to

fraudulent transactions.  Kesselman informed Ms. Gonzalez that all the transactions had been

verified by UPS and all documentation for the transactions had been provided in months

prior. Ms. Gonzalez stated that UPS no longer wanted to continue doing business with

TapJets and was closing the account. Kesselman was informed that if he had any further

concerns, he should contact UPS management.

68.    UPS eventually provided TapJets with a second letter from First Data, again undated, which

had been sent only to UPS. The letter informed TapJets as follows: (See Exhibit "25")

> "Please be informed that effective immediately the merchant <u>processing agreement between United Payment Services and TapJets, Inc</u> established by the contract dated 02/18/2016 will be terminated due to chargebacks for fraudulent reasons." (¶ 1)

> Consistent with the terms of the Agreement, any batches processed going forward will be held in reserve. <u>These funds will be held for the greater of six months or longer</u> as is consistent with the MasterCard and Visa Rules and Regulations. (¶ 2)

> "Please be advised that obligations to fund any chargebacks resulting from sales processed for the <u>Client by United Payment Services survive termination of the agreement between the Client and United Payment Services.</u>" (¶ 3)

69.    On December 1, 2016, still confused by First Data's involvement in the matter, Kesselman emailed Gibson requesting a copy of the TapJets Merchant Application and the address for UPS' legal department. Gibson's response was as follows:

> "I can have a copy of your agreement mailed to you and if you have any legal matters, they would need to be addressed with First Data not us."

70.    Kesselman reiterated to Gibson's email by stating that TapJets' application was with UPS and not First Data. At this time, Gibson finally disclosed that:

> "We are an ISO for First Data and any risk closures are directly from First Data, not us. We would love to continue to process for you but this is completely out of our hands."

71.    This information was directly contrary to the representations on UPS' Website that it was an affiliated ISO of Wells Fargo. In response, Kesselman again requested a copy of any alleged agreement between TapJets and UPS and/or First Data (See Exhibit "26"). Gibson replied: (See Exhibit "27")

> The copy of your agreement is being mailed to the business address on file. We do not have a legal department otherwise I would provide you with such information. Your agreement <u>references First Data in many areas</u> which you will see on the copy that is being mailed.

72.    On or about December 1, 2016, TapJets sent a Notice of Intent to File a Lawsuit to UPS'

corporate officer. No response was ever received. (See Exhibit "28")

73. On December 4, 2016, TapJets received a fabricated copy of the Merchant Application which included a forged signature from TapJets. The Merchant Application also contained loosely arranged documents, screen shots, improperly sequenced paragraphs, unclear cross-references, several clerical errors, and is altogether intelligible. More importantly, the purported Merchant Application now looked more like a contract rather than an application. (See Exhibit "28")

74. TapJets denies signing the Merchant Application attached hereto as Exhibit 28 and has reason to believe that those documents were fabricated by UPS after receiving notice of TapJets' legal claims in order to avoid liability for UPS' fraudulent and deceptive business practices. The purported Merchant Application sent to TapJets differs dramatically from that which was shown prior to TapJets and UPS doing business. More specifically, it contains fees for termination of the contract and returned payments which were never discussed with or shown to TapJets.

75. On or about December 8, 2016, TapJets received two letters from UPS' "Merchant Services" showing that the reason for the chargeback(s) to TapJets' Merchant Account was "72/Not Authorized" which differed greatly from UPS' previous explanations. (See Exhibit "29" and "30")

76. The letters sent from UPS to TapJets were sent in bad faith. These letters claim to allow TapJets the opportunity to respond by December 1, 2016, however, they were received after that date once TapJets' account had already been closed and funds already withdrawn. These letters simply represent another attempt by UPS to create a paper trail and avoid potential liability.

77. TapJets' waited for longer than six months to receive a refund of the withdrawals taken from its account. UPS has failed and refused to return the withdrawals taken from TapJets' account and the improper fees which it collected. UPS has therefore been unjustly enriched.

78. UPS intentionally caused TapJets to be placed on MATCH in response to TapJets' asserting its legal rights in this matter. TapJets was therefore unable to secure the services of a new Payment Processor which it required in order to mitigate its losses.

79. TapJets has incurred the economic damages of at least $325,738.57 as the proximate result of UPS' false, misleading, and deceptive business practices.

<div align="center">

**COUNT I:  <u>FRAUD AND FRAUDELENT INDUCEMENT</u>**
*(Against UPS)*

</div>

80. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

81. TapJets alleges that the actions and conduct of UPS constitute common law fraud and fraudulent inducement.

82. UPS omitted and falsely represented material facts to TapJets concerning UPS' bank affiliations and ability to offer credit card processing services. UPS failed to disclose the true nature and identity of the parties involved in TapJets' transactions. UPS falsely represented to TapJets that it was a registered Payment Processor for Wells Fargo both on its website and in correspondence. UPS failed to disclose that it had enlisted a third-party company (First Data) to provide TapJets' card processing services. UPS falsely represented the fees which it was charging to TapJets as its Payment Processor.

83. UPS made these representations with the intent that TapJets rely on same and agree to conduct business with UPS. These representations were material in so far as they induced TapJets into disclosing confidential business information which UPS then used to submit a

fraudulent Merchant Application. Had TapJets known the true facts, it would not have disclosed any such information or entered into any agreement, whether express or implied, with UPS.

84.    UPS either knew their representations were false at the time they were made or made the representations without any regard of the truth. These false representations have caused TapJets injuries.

85.    TapJets is entitled to its actual damages, punitive damages, court costs, pre-judgment and post-judgment interest as a result of UPS' fraudulent conduct.

## COUNT II:   <u>NEGLIGENT MISREPRESENTATION OF SERVICE FEES</u>
*(Against UPS)*

86.    TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

87.    UPS made negligent misrepresentations as to the fees it would charge TapJets for UPS' credit card services before and during the parties' relationship. UPS knew or should have known that it would be charging TapJets additional fees on through UPS' billing statements because those fees had been emancipated several years earlier. UPS failed to exercise reasonable care or competence in representing its fees to TapJets.

88.    TapJets justifiably relied on UPS' fee information when it decided to establish a Merchant Account through UPS.

89.    TapJets suffered economic damages as a result of UPS' negligent misrepresentation which it seeks to recover in this action.

## COUNT III:   <u>NEGLIGENT MISREPRESENTATION OF CREDIT CARD AUTHORIZATION AND APPROVALS</u>
*(Against UPS)*

90.    TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the

same as if set forth herein verbatim.

91. UPS negligently misrepresented that several TapJets' transactions had been reviewed and approved by UPS as TapJets' Payment Processor. Based on UPS' representations, TapJets provided valuable goods and customers to customers for which TapJets' expected to receive compensation via credit card. Because of UPS' negligence in reviewing TapJets' transactions, funds were subsequently withdrawn from TapJets' accounts and TapJets ultimately went unpaid.

92. Plaintiff justifiably relied on UPS' misrepresentations when deciding whether to accept Credit Card from particular customers for its services.

93. Because of UPS' negligent misrepresentations, Plaintiff suffered economic damages which it seeks to recover herein.

## COUNT IV: <u>CONSPIRACY</u>
*(Against UPS, Scott Rosen and Greg Rosen)*

94. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

95. TapJets allege that all Defendants jointly conspired with regard to the actions complained of herein.

96. Scott Rosen and Greg Rosen are the only shareholders of UPS. Scott Rosen serves as President of UPS while Greg Rosen serves as CFO and/or COO. Scott Rosen and Greg Rosen exercised total dominion and control of UPS during the course of its relationship with TapJets.

97. Defendants' conspiracy was aimed at securing unjust profits from underinformed Merchants such as TapJets through UPS' hidden fees and unclear agreements. As a result of these tactics Defendants were able to artificially inflate the value of UPS' company to prospective

purchasers.

98. To accomplish their objectives, Defendants' expressed to its UPS' potential customers that it was directly affiliated with Wells Fargo Bank and that they were able to offer "low fees" and "instant approvals" that other could not. To that extent, UPS even displayed "testimonials" on their website that speak to the low fees and quality services that UPS provides. Scott Rosen and Greg Rosen designed and implemented the MAAS system to further conceal the nature of UPS' services and fraudulent documentation. Through UPS' use of the MAAS system, Defendants were able to withhold passwords from TapJets and submit a forged Merchant Application on its behalf. The MAAS system was designed to prevent TapJets from accessing the Merchant Application even after it had been submitted and approved. MAAS was the primary tool used by Defendants to rearrange TapJets' Merchant Application and perpetuate fraud.

99. When TapJets questioned UPS about its questionable practices, Defendants repeatedly used stall tactics to avoid the issues. Defendants routinely ignored TapJets concerns and/or stated that it had mailed documents to TapJets which in fact were never sent.

100. TapJets was at all times required to deal exclusively with UPS. As such, Defendants' conspiracy created a layer of separation between the TapJets and First Data, the actual Payment Processor. Defendants' conspiracy was deliberate, systematic, and clearly arose from a meeting of their minds.

101. TapJets suffered economic damages as a result of Defendants' conspiracy which it seeks to recover herein.

### COUNT V:  TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS
*(Against UPS)*

102. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

103. TapJets relies on its ability to accept credit card payments in order to establish new customers and business accounts. UPS was made aware of this fact during the application process when TapJets disclosed that 50% of its customer payments were received by credit card. Without sufficient cause or explanation, UPS caused TapJets to be placed on a MATCH list which negated TapJets from utilizing the services of any other Payment Processor. These acts were intended to maximize TapJets economic duress while it attempted to separate from UPS.

104. UPS' tortious acts resulted in TapJets' customers being unable to place online orders and being turned away. UPS had knowledge that its tortious conduct would interfere with TapJets' pending transactions and consciously decided to prevent those sales.

105. TapJets suffered economic damages as a result of UPS' tortious interference and seek to recover same.

**COUNT VI:  <u>VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT</u>**
**<u>PASSING OFF SERVICES AS THOSE OF ANOTHER</u>**
**<u>TEXAS BUSINESS AND COMERCE CODE SECTION 17.46(b)(1)</u>**
*(Against UPS)*

106. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

107. TapJets is a consumer as defined by the Texas Deceptive Trade Practices Act.

108. UPS advertised on their website and positioned themselves as a registered ISO of Wells Fargo. In reality, by UPS' own mistaken admission, it was affiliated was affiliated and doing business with First Date. UPS included its name and logo on all communications and statements sent to TapJets in order to conceal the true source of its credit card processing services.

109.  UPS' advertisings and representations violate Tex. Bus. & Com. Code §17.46(b)(1) because they attempt to pass off services under a different company than that which TapJets was actually conducting business. TapJets would not have involved UPS in any transactions whatsoever had the source of UPS' services been disclosed.

110.  UPS' advertisements and representations were unconscionable and relied upon by TapJets to its detriment. UPS' conduct was a producing cause of TapJets' economic damages.

111.  UPS' above-listed conduct was committed knowingly and intentionally, thereby entitling TapJets to recover damages for mental anguish and trebled economic damages. Damages are sought within the jurisdictional limit of this Court.

**COUNT VII:  <u>VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT CAUSING CONFUSION OR MISUNDERSTANDING AS TO THE SOURCE, SPONSORSHIP, OR CERTIFICATION OF SERVICES TEXAS BUSINESS AND COMERCE CODE SECTION 17.46(b)(2) and 17.46(b)(3)</u>**
*(Against UPS)*

112.  TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

113.  TapJets is a consumer as defined by the Texas Deceptive Trade Practices Act.

114.  UPS informed Plaintiff that it had approved and opened TapJets' Merchant Account. UPS also informed TapJets that was certain transactions were authorized after investigation by UPS. In making these representations, UPS was fully aware that Wells Fargo and/or First Date were actually the companies performing these services yet failed to disclose this information to TapJets.

115.  UPS represented to TapJets that all services would be provided directly through UPS and that all associated fees would being charged through UPS. Through its course of dealing, TapJets discovered that these representations were false.

Certified Document Number: 82810173 - Page 27 of 34

116. UPS' representations violate Tex. Bus. & Com. Code §17.46(b)(2-3) in that they intentionally confuse TapJets as to the role of UPS in the transaction process. TapJets was unaware of any affiliation with First Data until approximately ten months after it began doing business with UPS. It was not until TapJets sought to recover its losses from UPS that the affiliation to First Data was disclosed.

117. Had TapJets received accurate information, it would have never transacted business with UPS. TapJets relied upon UPS' representations to its detriment.

118. UPS engaged in an unconscionable course of action by intentionally confusing consumers such as TapJets as to UPS' affiliations and authority. The above-listed conduct was a producing cause of TapJets' economic damages which resulted.

119. UPS' wrongful conduct was committed knowingly and intentionally, thereby entitling TapJets to recover damages for mental anguish and trebled economic damages. Damages are sought within the jurisdictional limit of this Court.

**COUNT VIII:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT REPRESENTING SERVICES THAT CLAIM TO HAVE CHARACTERISTICS, BENEFITS AND QUANTITIES BUT DO NOT TEXAS BUSINESS AND COMERCE CODE SECTION 17.46(b)(5)**
*(Against UPS)*

120. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

121. TapJets is a consumer as defined by the Texas Deceptive Trade Practices Act.

122. UPS falsely represented the following information to TapJets about UPS' services:

    *i.*   UPS would be acting as TapJets' Payment Processor.

    *ii.*  UPS would convert credit card tenders at TapJets' business into cash payments in TapJets Merchant Account (i.e. "Credit Card same as Cash").

    *iii.* UPS would be investigated and authorizing TapJets' card transactions.

Certified Document Number: 82810173 - Page 28 of 34

    *iv.*  TapJets would be charged fees by UPS at a definite rate.

    *v.*  UPS would make timely deposits to TapJets' Merchant Account for all transactions less only the agreed-upon fees.

    *vi.*  UPS would provide assistance to TapJets for any disputed funds or transactions.

    *vii.*  UPS was affiliated with Wells Fargo and would process TapJets' funds through Wells Fargo.

    *viii.*  UPS held and established its own Merchant Accounts.

123. UPS' above-listed misrepresentations constitute violations of Tex. Bus. & Com. Code §17.46(b)(5) in so far as they suggest that UPS' services have characteristics, uses, benefits and quantities which they do not. TapJets relied upon these unconscionable representations to its detriment.

124. UPS' conduct as described above was a producing cause of TapJets' economic damages and was knowing and intentionally. Accordingly, UPS is liable for TapJets' mental anguish and trebled economic damages as permitted under the Texas Deceptive Trade Practices Act.

**COUNT IX:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT MAKING FALSE OR MISSLEADING STATEMENTS OF FACT CONCERNING THE EXISTENCE OF PRICE REDUCTIONS TEXAS BUSINESS AND COMERCE CODE SECTION 17.46(b)(11)**
*(Against UPS)*

125. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

126. TapJets is a consumer as defined by the Texas Deceptive Trade Practices Act.

127. UPS informed TapJets that it was able to offer low rates because UPS was a direct affiliate of Wells Fargo. To that extent, UPS told TapJets that the fee to be charged was based on "cost plus" model. UPS represented that for Mastercard/Visa payments it would charge a fee of 0.30% per transaction and 0.5% per transaction for American Express. UPS represented

the Interchange Rate to be 0.5% to 2.9% depending on the card.

128.  As is evidenced by the additional fees included on TapJets' first billing statement, UPS knew these rates were false.  UPS' conduct violates Tex. Bus. & Com. Code §17.46(b)(11).

129.  UPS engaged in an unconscionable course of action by making false statements and charging exorbitant hidden fees. Had TapJets been aware of the inaccurate fees it would not have transacted business with UPS. TapJets relied upon UPS' representations to its detriment.

130.  UPS' conduct as described above was a producing cause of TapJets' economic damages. UPS conduct was committed knowingly and intentionally. Accordingly, UPS' is liable to TapJets for additional damages up to three times the amount of economic damages, as permitted by the Texas Deceptive Trade Practices Act.

**COUNT X:  <u>VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT REPRESENTING THAT AN AGREEMENT CONFERS OR INVOLVES RIGHTS, REMEDITS, OR OBLIGATIONS WHICH IT DOES NOT HAVE OR INVOLVE, OR WHICH ARE PROHIBITED BY LAW. TEXAS BUSINESS AND COMERCE CODE SECTION 17.46(b)(12)</u>**
*(Against UPS)*

131.  TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

132.  TapJets a consumer as defined by the Texas Deceptive Trade Practices Act.

133.  After submitting TapJets' Merchant Application without authorization, UPS made representations to TapJets that the application was not actually an application, but rather it was a binding contract with UPS. TapJets was not shown a copy of this document nor did it agree to its terms. Ten months later, UPS represented that the document was actually not an agreement between TapJets and UPS, but was instead a contract between TapJets and First Data.

134.  TapJets never authorized UPS to sign the Merchant Application on TapJets' behalf nor did

Certified Document Number: 82810173 - Page 30 of 34

it ever execute an agreement with First Data.

135. UPS' conduct is in violation of Tex. Bus. & Com. Code §17.46(b)(12) in so far as TapJets never signed a contract for credit card processing services with either UPS or First Data. Had TapJets been aware that true nature of UPS' application process it would have never commenced doing business with UPS.

136. TapJets relied upon these representations to its detriment.

137. UPS engaged in an unconscionable course of action by concealing the identities of the parties during UPS' application process.

138. UPS' conduct as described above was a producing cause of TapJets' economic damages. Because of such conduct, TapJets has suffered economic damages within the jurisdictional limits of this Court.

139. UPS' conduct described above was committed knowingly and intentionally. Accordingly, UPS is liable to TapJets' for additional damages of up to three times its economic damages as permitted by the Texas Deceptive Trade Practices Act.

## COUNT XI:  **BREACH OF IMPLIED CONTRACT**
### *(Against UPS)*

140. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

UPS solicited TapJets to acquire its card processing services and orally agreed upon set fees to be charged for these services. TapJets agreed to those fee amounts in principle. UPS then immediately completed TapJets' Merchant Application and approved its Merchant Account. Accordingly, TapJets expected that it would be charged at the rates which the parties had discussed. UPS later confirmed with TapJets that the fees previously discussed were the fees being assessed. TapJets and UPS therefore entered into and began performance under an oral

Certified Document Number: 82810173 - Page 31 of 34

agreement.

141. TapJets performed in accordance with the terms of the oral agreement but UPS did not. UPS breached the terms of that agreement as follows:

   i.   UPS systematically altered the fee structure which TapJets relied upon when using UPS' services.

   ii.  UPS failed to deposit money collected from TapJets' customers to its Merchant Account.

   iii. UPS withdrew funds from TapJets account without authorization.

   iv.  UPS failed to provide credit card processing services in accordance with credit card organization rules.

   TapJets incurred economic damages as a result of UPS' breaches which are within the jurisdictional limits of this Court.

## COUNT XII:  <u>ALTER EGO</u>

142. TapJets realleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

143. Pleading further and alternatively if necessary, TapJets alleges that UPS is the alter ego of its corporate officers and only shareholders, Scott Rosen and Greg Rosen. All Defendants named herein should be treated as one entity to prevent Scott Rosen and Greg Rosen from using the corporate fiction as a tool to inflict fraud upon TapJets.

144. UPS' corporate fiction should be disregarded because Defendants have used UPS to perpetuate fraud and evade legal obligations. Defendants have also failed to comply with §21.223 of the Texas Business Organizations Code. Defendants have failed to maintain the corporate protections of UPS.

145. TapJets alleges that Scott Rosen and Greg Rosen have used UPS to earn unjust compensation and insulate themselves from fraudulent billing practices.

Certified Document Number: 82810173 - Page 32 of 34

146. TapJets seeks joint and several liability against all named Defendants.

## DAMAGES

147. Because of the deceptive and fraudulent actions of Defendants, Plaintiff has suffered economic damages.

148. Plaintiff was deprived of sale proceeds from air charter and transportation services in the amount of Two Hundred Eighty-Three Thousand Nine Hundred Thirty-Three dollars and Seventeen cents ($283,933.17).

149. Plaintiff was charged fees on the above transactions in the amount of Ten Thousand Eight Hundred Seven dollars and Forty-Nine cents ($10,807.49).

150. Plaintiff lost revenue due to the inability to receive payment from customers in an amount equal to Thirty Thousand Nine Hundred Ninety-Seven dollars and Ninety-One cents ($30,997.91).

151. In addition to the above economic damages, due to Defendants placing Plaintiff on a merchant "black list," Plaintiff has suffered an ability to authorize and accept Credit Cards on their website and incurred further economic loss which it seeks to recover herein.

## ATTORNEYS FEES AND COURT COSTS

152. Defendants, despite several good faith notices to resolve this matter, forced Plaintiff to file this suit and retain legal counsel. Plaintiff therefore requests an award of its costs of court and reasonable and necessary attorney's against UPS.

## JURY DEMAND

153. Plaintiff hereby requests a trial by jury.

## REQUEST FOR DISCLOSURE

Pursuant to Rule 194.1 of the Texas Rules of Civil Procedure, Defendants' are requested to

disclose, within fifty (50) days of the service of this request, the information or material described in Rule 194.2 (a)–(l) and Rule 190.2 (b)(6).

## <u>PRAYER AND REQUEST FOR RELIEF</u>

For the foregoing reasons, Plaintiff requests that upon final trial or other disposition of this lawsuit, Plaintiff have and recover judgment against Defendants jointly and severally for the following:

(a)     all damages requested;

(b)     reasonable and necessary attorney's fees;

(c)     pre-judgment and post-judgment interest as provided by law;

(d)     costs of court;

(e)     exemplary damages; and

(f)     such other and further relief, at law or in equity, to which Plaintiffs are justly entitled.

Respectfully Submitted,

Weatherby Echols Law Group, PLLC

BY: <u>/s/ Andrew K. Weatherby</u>
        Andrew K. Weatherby
        Texas Bar No. 24098583
        4606 FM 1960 West, Suite 400
        Houston, Texas 77069
        Tel.: (281) 315-8849
        Fax: (832) 213-1477
        Email: aweatherby@we-legal.com
        ATTORNEY FOR PLAINTIFF
        TAPJETS, INC.

Certified Document Number: 82810173 - Page 34 of 34



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019

Certified Document Number:        82810173 Total Pages:  34

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

INTERNET ARCHIVE

http://www.unitedpaymentservices.com:80/about-us.aspx   Go

11 captures
23 Nov 2016 - 28 May 2017

MAR **MAR** MAY
**21**
2013 **2016** 2

# 1.866.886.4833

PAYMENT SERVICES

Home   Credit Card Processing Solutions   Terminals & Software   Other Services   Apply Now !!

Home > About Us

## About United Payment Services

United Payment Services offers credit and ATM/debit card processing, check guarantee services, purchasing card programs and Internet electronic commerce capabilities to businesses of all sizes. Built on many years of experience in the payment processing industry, **United Payment Services** is uniquely positioned to execute our corporate mission...

**Dedicated to Uniting Your Business Needs with the Latest in Payment Processing Technology**

Our core corporate belief is that our company exists to enable the American dream by providing businesses with the latest electronic payment capabilities at the fairest prices without ever sacrificing our promise to deliver unsurpassed customer service.

Whether working with a start-up corner store or a public corporation, the United Payment Services team respects every customer and treats them with the highest level of professionalism and courtesy at all times.

See how United Payment Services can expand your business capabilities. You can apply for a merchant account directly online, simply fill out an inquiry form or call us 1-866-8UNITED (1-866-886-4833) for assistance in answering your credit card processing questions.

## Choose us with Confidence - Testimonials

"United Payment Services is by far the best processing company I have ever processed with. There is no hidden fees and their service is second to none."

"After reviewing my statement with my current processing company I noticed rates and fees that I never signed up for. It seems they were dinging my bank account regularly for extra fees. I switched to United Payment Services and it was probably the best business decision I have ever made. They save me money and their service is great."

**Questions? Call Us Now!**
# 1.866.886.4833

**Begin Processing Credit Cards Today...**

## Easy as 1,2,3

Please provide the information below or call us at **1.866.886.4833** and we can approve your business for a merchant account

| | |
|---|---|
| **Business Name:** | |
| **First Name:** | |
| **Last Name:** | |
| **Phone:** | |
| **Email:** | |
| **Comments:** | |

Signup Today

United Payment Services is a Registered ISO of Wells Fargo Bank, N.A., Walnut Creek, CA.
Copyright © 2015 United Payment Services. All Rights Reserved.
The Clover trademark and logo are owned by Clover Network, Inc., a First Data company.
Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries.
Apple Pay and Touch ID are trademarks of Apple Inc. Android™ is a trademark of Google, Inc.
EMV® is a registered mark owned by EMVCo LLC. www.emvco.com
All other trademarks, service marks and trade names referenced in this material are the property of their respective owners.
United Payment Services Privacy Policy

Inc. 500

TOP ★★★★★ CREDIT CARD PROCESSING.COM BEST PROCESSOR WINNER

**Exhibit "1"**

Certified Document Number: 82810



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019

Certified Document Number:        82810174 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

INTERNET ARCHIVE

http://www.unitedpaymentservices.com:80/default.aspx          Go

MAR **MAR** MAY
◄  **21**  ►
200_

15 captures
23 Nov 2006 - 1 Jul 2017

UNITED
PAYMENT SERVICES

# 1.866.886.4833

| Home | Credit Card Processing Solutions | Terminals & Software | Other Services | Apply Now !! |

## Accept Credit Cards At Your Business Today!

**Wholesale Pricing**     **Lowest Overall Cost, Guaranteed**
**FREE Equipment**        **24-7 Professional Support!**

Please complete the information below:

| Business Name | First Name | Last Name |
| Email Address | | |

**Get Started** ➤




TOP ★★★★★
CREDIT CARD
PROCESSORS.COM
BEST PROCESSOR
WINNER

---

| **Retail Solutions** | **Mobile Phone Solutions** | **Phone Order Solutions** | **eCommerce Solutions** |
|---|---|---|---|
|  |  |  |  |
| **APPLY NOW** | **APPLY NOW** | **APPLY NOW** | **APPLY NOW** |
| Process Credit Cards in your Retail Store, Restaurant or Service Station! | Accept Credit Cards on ANY mobile phone! | Everything needed to process customer payments received by phone, mail, or fax! | Securely Accept Credit Cards on the Web. |
| ⁂ Card Terminal<br>⁂ Personal Training<br>⁂ Easy Setup<br>⁂ .... Much More | ⁂ Phone Card Reader<br>⁂ Email Receipts<br>⁂ Virtual Terminal<br>⁂ .... Much More | ⁂ Virtual Terminal<br>⁂ Recurring Billing<br>⁂ Save Card on File<br>⁂ .... Much More | ⁂ Payment Page<br>⁂ Save Card on File<br>⁂ Developer API<br>⁂ .... Much More |
| Recommended for merchants selling face-to-face with their customers | Recommended for anyone needing secure payment acceptance while on the go | Recommended for merchants whose customers call in, mail in, or fax in their orders | Recommended for anyone selling on the web |
| **Learn More** | **Learn More** | **Learn More** | **Learn More** |

United Payment Services is a registered ISO of Wells Fargo Bank, N.A., Walnut Creek, CA.
American Express requires separate approvals.
Copyright © 2015 United Payment Services. All Rights Reserved.
The Clover trademark and logo are owned by Clover Network, Inc., a First Data company.
Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries.
Apple Pay and Touch ID are trademarks of Apple Inc. Android™ is a trademark of Google, Inc.

Certified Document Number: 82801713 - Page 1 of 2

**Exhibit "2"**

EMV® is a registered mark owned by EMVCo LLC. www.emvco.com
All other trademarks, service marks and trade names referenced in this material are the property of their respective owners
United Payment Services Privacy Policy

Certified Document Number: 82810175 - Page 2 of 2



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019

Certified Document Number:      82810175 Total Pages:  2

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

http://www.unitedpaymentservices.com:80/customer-service.aspx   Go

13 captures
20 Nov 2010 - 3 Jul 2017

MAR **MAR** JUN
**21**
2013 2016 201

# 1.866.886.4833

**PAYMENT SERVICES**

| Home | Credit Card Processing Solutions | Terminals & Software | Other Services | Apply Now !! |

Home > Customer Service

## Contact Us

**Sales**
Phone:    1 (866) 886-4833
Fax:       1 (866) 886-4833
Email:    sales@unitedpaymentservices.com
Inquiry:   Click Here to Request Information

**Customer Service**
Phone:    1 (888) 464-0113
Fax:       1 (805) 557-6059
Email:    support@UnitedPaymentServices.com

### Questions? Call Us Now!
# 1.866.886.4833

## Begin Processing Credit Cards Today..
## Easy as 1,2,3
Please  provide the information below or call us at **1.866.886.4833**  so we can approve your business for a merchant account.

| Business Name: | |
| First Name: | |
| Last Name: | |
| Phone: | |
| Email: | |
| Comments: | |

Signup Today

## Choose us with Confidence - Testimonials

"United Payment Services is by far the best processing company I have ever processed with. There is no hidden fees and their service is second to none."

"After reviewing my statement with my current processing company I noticed rates and fees that I never signed up for. It seems they were dinging my bank account regularly for extra fees. I switched to United Payment Services and it was probably the best business decision I have ever made. They save me money and their service is great."

United Payment Services is a registered ISO of Wells Fargo Bank, N.A., Walnut Creek, CA.
American Express requires separate approval.
Copyright © 2015 United Payment Services. All Rights Reserved.
The Clover trademark and logo are owned by Clover Network, Inc., a First Data company.
Apple, the Apple logo and iPhone are trademarks of Apple Inc. registered in the U.S and other countries.
Apple Pay and Touch ID are trademarks of Apple Inc. Android™ is a trademark of Google, Inc.
EMV® is a registered mark owned by EMVCo LLC. www.emvco.com
All other trademarks, service marks and trade names referenced in this material are the property of their respective owners.
United Payment Services Privacy Policy

Inc. 500

TOP ★★★★★
CREDIT CARD

**EXHIBIT "3"**

Certified Document Number: 8290ac1b ...



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019

Certified Document Number:        82810176 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

**Subject:** United Payment Services Merchant Application and Agreement

**Date:**  Thursday, February 11, 2016 at 2:02:54 PM Central Standard Time

**From:**  sales@unitedpaymentservices.com <sales@unitedpaymentservices.com>

**To:**  Eugene Kesselman <eugene@tapjets.com>

Dear Eugene Kesselman,

This e-mail has been generated because an electronic application for a merchant account has been initiated by Kari Gibson
of United Payment Services pursuant to your request. If you have any questions please contact Kari Gibson at 1-800-801-1955.

Click on the link below to go to your secure online application and complete the application process.
The password your sales representative provided will be required.

Please carefully review the entire Merchant Application and Merchant Agreement and ensure that all of your information is correct.
Once the application has been completed and submitted, you will receive an e-mail confirmation.

DO NOT FORWARD THIS LINK TO ANYONE. IT PROVIDES A SECURE METHOD OF ENSURING THAT YOU ARE THE INDIVIDUAL ACCEPTING THE
TERMS AND CONDITIONS OF YOUR MERCHANT AGREEMENT.

Click Here to Complete Merchant Application
Or cut and paste the following into your web browser:
https://maas.UnitedPaymentServices.com/Default.aspx?LinkCode=1602110253CBCYEULHK1NTGK3LO7S2K5

Again, if you have any question please contact Kari Gibson at 1-800-801-1955.

Thank you in advance for the opportunity to assist you with your merchant needs.

United Payment Services, Inc.

******************************************************************************************************************************************************
The information in this message may be proprietary and/or confidential, and protected from disclosure. If
the reader of this message is not the intended recipient, or an employee or agent responsible for delivering
this message to the intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited. If you have received this communication in error,
please notify United Payment Services immediately by replying to this message and deleting it from your computer.
******************************************************************************************************************************************************

**EXHIBIT "4"**



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019

Certified Document Number:      82810177 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

**Subject:** United Payment Services Merchant Application and Agreement
**Date:**    Thursday, February 11, 2016 at 2:10:59 PM Central Standard Time
**From:**    kgibson@UnitedPaymentServices.com <kgibson@UnitedPaymentServices.com>
**To:**      Eugene Kesselman <eugene@tapjets.com>
**CC:**      Eugene Kesselman <eugene@tapjets.com>

Dear Eugene Kesselman,

This e-mail has been generated because an electronic application for a United Payment Services merchant account has been electronically signed by Eugene Kesselman.
The application is currently being processed and your account executive will be in contact with you shortly.
If you have any questions please contact your account executive Kari Gibson at 1-800-801-1955.

If you feel you have received this email in error, please contact our our main number 1-866-8 UNITED (1-866-886-4833) immediately.
Thank you the opportunity to assist you with your merchant needs.

United Payment Services, Inc.

**********************************************************************************************
****************************************
The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify United Payment Services immediately by replying to this message and deleting it from your computer.
**********************************************************************************************
****************************************

**EXHIBIT "5"**

DISTRICT COURT OF HARRIS COUNTY TEXAS

I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this January 17, 2019

Certified Document Number: 82810178 Total Pages: 1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**From:** Eugene Kesselman
**To:** Kari Gibson
**Cc:** Maria Kesselman
**Subject:** Re: United Payment Services Merchant Application and Agreement
**Date:** Wednesday, February 17, 2016 1:51:09 PM

Kari,

any update. I believe we have overcome issues with the credit company.  Can you please confirm

Eugene Kesselman
CEO, TAPJETS Inc.
eugene@tapjets.com
www.tapjets.com
Direct: 701-491-7227
Cell: 713-205-4800

_____
From: Kari Gibson <kgibson@UNITEDPAYMENTSERVICES.com>
Sent: Monday, February 15, 2016 12:28 PM
To: Eugene Kesselman
Subject: RE: United Payment Services Merchant Application and Agreement

Yes - got it and have forwarded to my underwriters for approval. My underwriter has also noted your file to expect a call as they have a couple of questions. I am not
sure if they will reach you today being a holiday or may not be until tomorrow.

Regards,
Kari Gibson
Director of Sales Services
800-801-1955 - direct
800-801-1955 - direct fax
kgibson@unitedpaymentservices.com
www.unitedpaymentservices.com

-----Original Message-----
From: Eugene Kesselman [mailto:eugene@tapjets.com]
Sent: Monday, February 15, 2016 10:09 AM
To: Kari Gibson
Subject: Re: United Payment Services Merchant Application and Agreement

The only thing that is filed with IRS is EIN number request.  Also attached here

Eugene Kesselman
CEO, TAPJETS Inc.
eugene@tapjets.com
www.tapjets.com
Direct: 701-491-7227
Cell: 713-205-4800

_____
From: Kari Gibson <kgibson@UNITEDPAYMENTSERVICES.com>
Sent: Monday, February 15, 2016 9:28 AM
To: Eugene Kesselman
Subject: RE: United Payment Services Merchant Application and Agreement

Hi Eugene,

I can forward everything you have included which should be enough. Typically the articles are not from the state, they are filed through the IRS.

Regards,
Kari Gibson
Director of Sales Services
800-801-1955 - direct
800-801-1955 - direct fax
kgibson@unitedpaymentservices.com
www.unitedpaymentservices.com

-----Original Message-----
From: Eugene Kesselman [mailto:eugene@tapjets.com]
Sent: Monday, February 15, 2016 7:26 AM
To: Kari Gibson; Maria Kesselman
Subject: Re: United Payment Services Merchant Application and Agreement

Certified Document Number: 82810179 - Page 1 of 4

# EXHIBIT "6"

In Texas Original Document is article of incorporation. I think. We don't have to have any other ones issued in Texas. Can you clarify what exactly you need that we may or may not have in Texas or North Dakota ?

Eugene

Eugene Kesselman
CEO, TAPJETS Inc.
eugene@tapjets.com
www.tapjets.com
Direct: 701-491-7227
Cell: 713-205-4800

From: Kari Gibson <kgibson@UNITEDPAYMENTSERVICES.com>
Sent: Monday, February 15, 2016 9:08 AM
To: Eugene Kesselman; Maria Kesselman
Subject: RE: United Payment Services Merchant Application and Agreement

Good Morning Eugene and Maria,

Thank you for forwarding the additional documents. You noted in the list of items that you attached the Articles of Incorporation but it doesn't appear that you included it. Please forward so that I can get your account approved.

Regards,
Kari Gibson
Director of Sales Services
800-801-1955 - direct
800-801-1955 - direct fax
kgibson@unitedpaymentservices.com
www.unitedpaymentservices.com

-----Original Message-----
From: Eugene Kesselman [mailto:eugene@tapjets.com]
Sent: Saturday, February 13, 2016 5:49 AM
To: Kari Gibson; Maria Kesselman
Subject: Re: United Payment Services Merchant Application and Agreement

Ok Hope this helps:

AttachedL

1. Articles of Incorporation
2. Certificate from State
3. Acknowledgment from State
4. Certificate of Good Standing
5. Lease with Tomball Jet Center for our 3100 Max Conrad Office Location 6. Lease with Fargo Jet Center for our Fargo North Dakota Location 7. Certificate of Incorporation Foreign Registration with North Dakota for our Office There.

Let me know if there is anything else you may need.
_____
From: Kari Gibson <kgibson@UNITEDPAYMENTSERVICES.com>
Sent: Friday, February 12, 2016 4:22 PM
To: Eugene Kesselman; Maria Kesselman
Subject: RE: United Payment Services Merchant Application and Agreement

Hi Eugene and Maria,

My underwriter is requesting a copy of your Articles of Incorporation showing business name and address.

Please forward to my e-mail or fax to 800-801-1955.

Kari Gibson
United Payment Services
_____
From: Eugene Kesselman [eugene@tapjets.com]
Sent: Thursday, February 11, 2016 12:27 PM
To: Kari Gibson; Maria Kesselman
Subject: Re: United Payment Services Merchant Application and Agreement

Kari,

Heartland with whom I have done business for years asked for all sorts of things and then said they don't do charters.

So just in case you need it I am sending you some stuff that can help you advocate for us:

1.  DOT Department of Transportation Approval of our Economic Authority

2.  Our Contract with Clients which includes clear policy about our changes and how we authorize cards

3.  Sample quote

4.  Maria will also send last 2 statements since we opened an account

We are  the actual charter company with FAA approval license number 4TJA177A means we fly the flight not airline or travel agent.

_____

From: Kari Gibson <kgibson@UNITEDPAYMENTSERVICES.com>
Sent: Thursday, February 11, 2016 2:20 PM
To: Eugene Kesselman; Maria Kesselman
Subject: RE: United Payment Services Merchant Application and Agreement

Hi Eugene,

I should not need a copy of the check since you submitted the electronic version of our merchant application.

Regards,

Kari Gibson

Director of Sales Services

800-801-1955 - direct

800-801-1955 - direct fax

kgibson@unitedpaymentservices.com<mailto:kgibson@unitedpaymentservices.com>

www.unitedpaymentservices.com<http://www.unitedpaymentservices.com>

[Credit-Card-Processing - Small]<http://www.topcreditcardprocessorsratings.com/rankings-of-best-credit-card-processing-companies>

From: Eugene Kesselman [mailto:eugene@tsavts.com]
Sent: Thursday, February 11, 2016 12:14 PM
To: Maria Kesselman
Cc: Kari Gibson
Subject: Fw: United Payment Services Merchant Application and Agreement

Maria,

can you please send Voided Check to Ms. Gibson.

Eugene

_____

From: kgibson@UnitedPaymentServices.com<mailto:kgibson@UnitedPaymentServices.com>
<kgibson@UnitedPaymentServices.com<mailto:kgibson@UnitedPaymentServices.com>>
Sent: Thursday, February 11, 2016 2:10 PM
To: Eugene Kesselman
Cc: Eugene Kesselman
Subject: United Payment Services Merchant Application and Agreement

Dear Eugene Kesselman,

This e-mail has been generated because an electronic application for a United Payment Services merchant account has been electronically signed by Eugene Kesselman.
The application is currently being processed and your account executive will be in contact with you shortly.
If you have any questions please contact your account executive Kari Gibson at 1-800-801-1955.

If you feel you have received this email in error, please contact our our main number 1-866-8 UNITED (1-866-886-4833) immediately.
Thank you the opportunity to assist you with your merchant needs.

United Payment Services, Inc.

*******************************************************************************************************************

The information in this message may be proprietary and/or confidential, and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify United Payment Services immediately by replying to this message and deleting it from your computer.
*******************************************************************************************************************



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019

Certified Document Number:        82810179 Total Pages:  4

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



**United Payment Services**
TEL: 888-464-0112 option 4
FAX: 805-557-8059

## PAYMENT AUTHORIZATION

I,

<u>Eugene Kesselman</u>
Cardholder's Name

of

<u>TapJets, Inc</u>
Company Name

Authorize United Payment Services to charge **$51.00** to my credit card ending in
for Shipping/programming. Complete credit card information was provided to
United Payment Services over the phone.  I will not dispute the transaction.



X _____     _____2/22/16_____
                                                      Date

Certified Document Number: 82810180 - Page 1 of 1

**EXHIBIT "7"**



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019


Certified Document Number:        82810180 Total Pages:  1


Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

## Free Terminal Addendum

This Agreement is a contract between the Merchant named below and United Payment Services, Inc. (UPS).

NOW THEREFORE, United Payment Services (UPS) and the Party (Merchant) agree as follows:

I. Merchant agrees that all equipment supplied by UPS is the property of UPS, is being licensed to Merchant, and must be returned in good and working condition within ten(10) days of the termination or expiration of the Merchant Account with UPS. If the equipment is not returned within ten (10) days, Merchant agrees to pay the equipment value of $500 for all equipment supplied by UPS. Merchant authorizes UPS to ACH my account for said fees according to program. In addition, Merchant agrees to be responsible for any damages to the Equipment as a result of misuse or negligence.

II. Merchant agrees to indemnify and hold UPS harmless from and against an and all liabilities, losses, claims, damages, disputes, offsets, claims, or counterclaims of any kind in any way related to the use (or misuse) of the Equipment. Except as herein otherwise expressly provided, the Merchant Agreement, as heretofore amended, shall remain in full force and effect.

Merchant's Authorized Signer:

Ow_____te

INDIVIDUAL GUARANTY (NO TITLES) I/We hereby guarantee to UPS, their successors and assignments, the full, prompt, and complete performance of Merchant and all of Merchant's obligations under this Agreement, including, but not limited to, all monetary obligations arising out of Merchant's performance or nonperformance under this Agreement, whether arising before or after termination of this Agreement. The undersigned, by signing below, agrees to be bound by the Agreement and this Guaranty.

Eugene Kessler
Personal Guarantor Printed name Date

2/22/16

Pers_____ture Date

**EXHIBIT "8"**



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 17, 2019

Certified Document Number:        82810181 Total Pages:  1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

11/30/2018 9:56:37 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 29414965
By: ELDRIDGE, WALTER F
Filed: 11/30/2018 9:56:37 PM

# CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____   COURT *(FOR CLERK USE ONLY):* _____

STYLED TAPJETS INC.  VS. UNITED PAYMENT SERVICES, INC., ET. AL.

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br><br>Andrew Weatherby<br><br>Address:<br><br>4606 FM 1960 West,<br>Suite 400<br><br>City/State/Zip:<br><br>Houston, TX 77069<br><br>Signature:<br><br>*/s/ Andrew Weatherby* | Email:<br><br>aweatherby@we-legal.com<br><br>Telephone:<br><br>(281) 315-8849<br><br>Fax:<br><br>(832) 213-1477<br><br>State Bar No:<br><br>24098583_____ | Plaintiff(s)/Petitioner(s):<br><br>TAPJETS INC.<br><br>—<br><br>Defendant(s)/Respondent(s):<br><br>UNITED PAYMENT SERVICES, INC., SCOTT ROSEN and GREG ROSEN<br><br>—<br><br>[Attach additional page as necessary to list all parties] | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: _____<br><br>Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

## 2. Indicate case type, or identify the most important issue in the case *(select only 1):*

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☒ Debt/Contract<br>☒ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional<br> Liability: _____<br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability<br> List Product:<br><br>☐ Other Injury or Damage:<br> _____ | ☐ Eminent Domain/<br> Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus—<br> Pre-indictment<br>☐ Other: _____ | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br>**Other Family Law**<br>☐ Enforce Foreign<br> Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities<br> of Minority<br>☐ Other: _____ | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with<br> Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Paternity/Parentage<br>☐ Termination of Parental<br> Rights<br>☐ Other Parent-Child:<br> _____ |

| **Employment** | **Other Civil** | |
|---|---|---|
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair<br> Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: _____ |

| **Tax** | *Probate & Mental Health* | |
|---|---|---|
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: _____ |

## 3. Indicate procedure or remedy, if applicable *(may select more than 1):*

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

## 4. Indicate damages sought *(do not select if it is a family law case):*

Certified Document Number: 82810182 - Page 1 of 2

⬚ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
⬚ Less than $100,000 and non-monetary relief
⬚ Over $100,000 but not more than $200,000
☒ Over $200,000 but not more than $1,000,000
⬚ Over $1,000,000

Rev 2/13

Certified Document Number: 82810182 - Page 2 of 2



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   <u>January 17, 2019</u>

Certified Document Number:      <u>82810182 Total Pages:  2</u>

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**